[Civ. No. 1229. Fourth Appellate District.—May 19, 1933.]

ALICE HOWARD, Respondent, v. HOMER C. HOWARD, Appellant.

Christian Hoeppner, Wakefield & Hansen and .Ray W. Hays for Appellant.

J. A. Chase and Farnsworth, Burke & Maddox for Respondent.

BARNARD, P. J.—This is an appeal from a judgment in favor of the plaintiff based upon a fourth amended complaint charging wilful misconduct on the part of the defendant. Plaintiff, who lived in Visalia with her two sons, Homer C. Howard and Sammie Howard, had gone to Santa Cruz on November 10, 1931. On the evening of that day, the two boys started from Visalia to join their mother at Santa Cruz, it being conceded that Sammie was riding as the guest of his brother in his automobile. It was raining or sprinkling and the pavement was wet. As they reached the outskirts of Visalia, near a point where a paved highway joins the city pavement, Homer, who was driving, saw an automobile approaching which appeared to be in the center of the paved highway. He kept on the highway, thinking

the other car would get over and when he finally saw that car was not getting over, he turned to the right, whereupon his car began to skid, left the pavement and turned over, causing injuries to his brother Sammie, from which he later died.

This action, brought by the mother against the surviving son, was tried by the court without a jury. The court found that the deceased was riding as the guest of his brother on pavement which was wet from rain then falling, and then found as follows:

"That defendant having full knowledge of the wet and slippery condition of said pavement, that in order to follow the pavement westerly on said street, he was required to change the direction of said automobile, and that in making such a change of direction, the wheels of said automobile would slip, skid or slide sideways and thereby cause him to lose control of said automobile, wilfully continued to increase and accelerate the speed of said automobile to a high rate of speed, and in changing the direction of said automobile while traveling at such high rate of speed, at or near a curve in said West Main street, the said automobile skidded sideways and defendant by reason thereof lost control of said automobile, and thereupon said automobile upset and turned completely over."

"That the manner in which defendant operated said automobile at the time of and immediately prior to its upsetting, under conditions then existing, constituted wilful misconduct of defendant, and such wilful misconduct of defendant was the proximate cause of the injuries to and death of said Sammie Hamilton Howard."

Appellant is charged with wilful misconduct in that he drove too fast over a wet pavement, especially in view of the fact that near the point of the accident there was a slight curve in the road. The only evidence as to this curve is that "it is three degrees and fifty-seven minutes, the angle of declination being so small—." The only other evidence material here may be thus summarized: The appellant testified that he was twenty-one years old; that he had been driving a car for six years and this particular car for one year; that this car would run about sixty-five miles an hour and was in good condition; that he was thoroughly familiar with the street where the accident occurred but had never paid

much attention to the curve; that the pavement was wet on this occasion; that he had previously driven this car on pavements when it was raining and that it had never slipped sideways; that when they were near an oak tree which stands near the western edge of Visalia, his brother told him he was driving too fast for such a wet pavement and that "I told him that I was in a hurry and that we could not lose any time"; that Sammie said nothing more about his driving; that the accident occurred some four or five blocks beyond the tree; that his car did not skid until he turned to get out of the way of an approaching car; that he did not turn until it was necessary to get out of the way of this car; that he did not know how fast he was going at the time his car started to skid; that he thought he was traveling between thirty and thirty-five miles per hour at that time but did not know exactly; and that when he passed the oak tree he was traveling approximately twenty-five miles an hour. When asked if he increased his speed after passing the tree he replied, "Apparently I did." He also testified that they left their home in Visalia at twenty-five minutes to 7 o'clock, that they wanted to reach Santa Clara before a dance closed, and that they "had planned" to reach Fresno at 7 o'clock. It does not appear when they planned this but apparently not after they left at 6:35, as this would have required making more than one hundred miles per hour which he knew he could not do. Another witness testified as to a conversation he had with the appellant shortly after the accident, as follows:

"A. I asked him how he came to have the accident and he said the mother was in Santa Cruz and they were going up there and he said he was in a hurry and when they got out to the edge of town he was stepping on it and shoved it to the floor board. He said he shoved the accelerator to the floor board and he said he was going too fast.

"Q. Was there any further conversation there at that time?

"A. Well he said that the highway was slick and he run off the highway, and it got out of his control and that there was all there was. And sliding and skidding and turned over."

The main question presented is whether this evidence will support a judgment based upon wilful misconduct on the

part of the appellant. The only direct evidence of speed is that appellant was running thirty or thirty-five miles an hour. While there is evidence that he pushed the accelerator to the floor board, there is no evidence as to how long it was kept there or when this was done. While an inference may be drawn that the appellant was driving too fast under the circumstances, the question is whether such an inference is sufficient, under the facts of this case, to establish that wilful misconduct which recent developments in our law have made essential to a recovery in such a case as this.

■ To meet certain well-known evils that had arisen, the legislature in 1929 eliminated ordinary negligence as a basis for recovery in guest cases. This not proving sufficient to accomplish the end desired, gross negligence also was eliminated in 1931, and before the incident involved here, making it necessary, aside from intoxication, to prove wilful misconduct in order to recover on account of injuries received by a guest. It seems to us that the intent of the legislature, as expressed in these enactments, requires that wilful misconduct be interpreted as something quite different from negligence, even gross negligence, and that it involves distinct positive elements rather than the merely negative elements of negligence or carelessness.

In *Krause* v. *Rarity*, 210 Cal. 644 [293 Pac. 62, 66, 77 A. L. R. 1327], it is said: ''The term 'gross negligence' has been defined as 'the want of slight diligence', as 'an entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others', and as 'that want of care which would raise a presumption of the conscious indifference to consequences'.''

In *Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510, 512], the court said: '' 'Wilful misconduct' means something different from and more than negligence, however gross. The term 'serious and wilful misconduct' is described by the supreme court of Massachusetts as being something 'much more than mere negligence, or even gross or culpable negligence', and as involving 'conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences'. (*In re Burns*, 218

Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601].) The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.''

 While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence, and that this misconduct must be wilful. While the word ''wilful'' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.

 Applying these rules to the case before us, and conceding that this driver must have known that driving on a wet road might possibly result in injury, it seems clear that the evidence does not justify the belief that he increased his speed with the knowledge or belief or expectation that any serious injury was probable. He had driven a car for

six years and this particular car for one year, had driven it in the rain without its skidding, and without doubt he believed he could do this again. If he may be said to have disregarded the possible consequences of his act, such disregard was due to carelessness rather than to wantonness and recklessness, and was undoubtedly based upon his belief that no injury was probable. While he may be said to have been reckless in the sense of being careless, that is only negligence and is not within the statute. But the intentional doing of an act with a wanton and reckless disregard of its possible consequences implies the doing of such an act either with the intent that harm shall result therefrom or in the attitude of mind of not caring if it does result in injury. No such intent and no such attitude of mind on the part of this appellant here appears. There is nothing in the evidence to show or even indicate that the appellant in driving as he did, even though the pavement was wet, either had actual knowledge or in law is chargeable with actual knowledge that his course of action constituted a real present peril, and that knowing such peril existed he consciously and intentionally failed to act to avoid the peril and avert an injury. The only conclusion possible from reading the evidence before us is that while the appellant was in a hurry and desired to proceed as rapidly as he could, he was not even indifferent to results but, on the contrary, had a fixed desire to arrive at his destination in time to attend a dance before it closed. It clearly appears that, although he proved to be mistaken, he thought he could safely drive as he did even though the pavement was wet; that while he intended to drive rather rapidly he neither intended the result that happened nor was indifferent to the same; and that he was far from being in such a frame of mind that he did not care whether or not he injured anyone. While this driver may have been negligent in a greater or less degree, in our opinion, no wilful misconduct within the meaning of this statute is disclosed by this evidence.

We think it was the intention of the legislature in its successive enactments, as set forth in section 141¾ of the California Vehicle Act, to prevent a recovery on account of injuries received by a guest in just such cases as this,

where the acts complained of constitute, in truth and in fact, ordinary or gross negligence and nothing more.

For the reasons given the judgment is reversed.

Jennings, J., and Andrews, J., *pro tem.*, concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 17, 1933.