[Civ. No. 1505. Fourth Appellate District.—January 15, 1935.]

WILLIAM L. LENNON et al., Respondents, v. C. F. WOODBURY et al., Appellants.

West & West for Appellants.

Euler & Subith and Charles S. Swanner for Respondents.

BARNARD, P. J.—Mrs. Lennon, one of the plaintiffs, was injured on January 29, 1933, while riding as a guest in an automobile owned by the defendant Woodbury and driven by the defendant Beck. On that day the four parties hereto, with three other persons, had gone on a pleasure excursion from their home in Anaheim to a place known as Big Pines Playground, in the San Bernardino Mountains. The party had gone in two cars and on the return trip Beck drove Woodbury's car in which were also Mrs. Lennon, a Mrs. Bamford, and Beck's small son, who sat in Mrs. Bamford's lap. They started for home about 3 o'clock in the afternoon and a snow which was then falling changed to rain about the time they reached the Cajon Pass highway and from that time until the accident happened it was

either raining or drizzling. As they passed through San Bernardino, Beck, by mistake, took a road leading to Redlands. He discovered his mistake after going about half a mile and turned around and started back toward San Bernardino. Very shortly after he turned around the car suddenly skidded without warning and went off the road into a ditch, causing the injuries complained of. This action followed and the defendants have appealed from a judgment in favor of the plaintiffs, after the verdict of a jury.

The main question presented is whether the evidence is sufficient to sustain an implied finding of wilful misconduct on the part of the driver of the car within the meaning of section 141¾ of the California Vehicle Act as amended in 1931. The meaning of the term "wilful misconduct" as used in that section has been well settled. (*Howard* v. *Howard,* 132 Cal. App. 124 [22 Pac. (2d) 279]; *Walker* v. *Bacon,* 132 Cal. App. 625 [23 Pac. (2d) 520]; *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622 [25 Pac. (2d) 988]; *Olson* v. *Gay,* 135 Cal. App. 726 [27 Pac. (2d) 922].) In *Turner* v. *Standard Oil Co., supra,* it is said:

"Negligence is carelessness, whether greater or less in degree, and tends to be negative in character while wilful misconduct is something of a more positive nature involving the intentional doing of a wrongful act, with the intent to harm another, with an utter disregard of the consequences, or with knowledge that an injury to a guest will be a probable result. All of these situations include actual or implied knowledge that injury is probable. Wilful misconduct, within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result."

It is respondents' contention that wilful misconduct, as thus defined, appears here and that the implied finding is supported by evidence which tends to show that the appellant .Beck was driving at a rate of speed which was excessive under the circumstances, in that his rear tires were worn smooth and the highway was wet and slippery, and that the injured respondent had asked him to drive slower on account of the rain.

Mrs. Lennon testified that as they were coming down the highway between Cajon Pass and San Bernardino, Beck at one time drove 55 miles an hour while passing two other cars; that she asked him not to drive so fast; that she did not notice whether or not he slowed down; that while they were on the Redlands road she did not look at the speedometer but it seemed to her they were going about as fast as they had before; that while they were on that road she asked him to be careful and he told her not to be so nervous; that she did not notice then whether he slowed down or not; that about five minutes before the accident occurred he was driving about 45 or 50 miles an hour and did not slow down when she asked him to be careful; that about five minutes later he turned around and the car skidded into the ditch when they had come back about 10 feet; and that before they started from Anaheim that morning she heard the appellant Woodbury say that he would not drive his car very fast because the rear tires were worn smooth. Several witnesses testified that this last statement was made while all of the party were together in a room, although none of the witnesses knew whether or not the appellant Beck heard the statement.

Mrs. Bamford testified that Mrs. Lennon asked Beck two or three times during the return trip not to drive so fast and that she did not remember whether or not he slowed down; that at one time while he was passing two cars she noticed that he was going 55 miles an hour, and that thereafter "it wasn't that fast"; that the roads "were slick all over from the rain; we didn't slide around, but it was raining and they were slick"; that the road at the point where the accident occurred "was wet, the same as the rest of the road"; and that just before the accident occurred the car was under control and there was nothing to indicate to her that it was going to skid "only the slick road".

The appellant Beck testified that at the point where the accident occurred the highway was made of concrete and was about 30 feet wide; that after turning around he had proceeded about 30 rods when the car suddenly skidded off the road; that when the car skidded he was traveling between 30 and 40 miles an hour; that there was a drizzling rain and the highway was wet; that he did not feel there was any danger at the time but felt perfectly safe; that

when Mrs. Lennon had previously asked him to slow down he was in the line of traffic and going the same as the other cars; and that he believed his car was under control and being driven in a safe manner. He also testified as follows:

"Q. Mr. Beck, with your experience in driving automobiles over a period of sixteen years, and over two hundred thousand miles, have you not had an experience of your car skidding on a wet street going less than twenty-five miles an hour? A. I believe I have, yes.

"Q. And because of the experience you have had you would not consider it dangerous to drive fast on wet streets? A. It all depends on what kind of a make-up or composition of the street; if it was a muddy road I would say three miles an hour is too fast."

If wilful misconduct appears from this evidence it must be inferred from the fact that the appellant Beck was traveling too fast in view of the wet pavement and his smooth tires and when he had been previously asked to slow down. While there is some evidence that he had previously been traveling at from 45 to 50 miles an hour, and at one time 55 miles an hour while passing two other cars, there is neither direct nor other evidence justifying an inference that he was traveling at more than from 30 to 40 miles an hour at the time the accident occurred. Beck testified to this effect and that he had proceeded approximately 30 rods after turning around when the car skidded, while the injured appellant testified that he went only about 10 feet after turning around before this occurred. The previous requests to slow down had been made at times when he was going at a higher rate of speed. While the other two witnesses could not remember whether or not he slowed down at the times he was asked to do so, the only evidence in the record is to the effect that at the time the accident occurred he was going considerably slower than when the requests were made. He was on a wide concrete pavement and it is a well-known fact that such pavements are not as slippery in wet weather as are certain other types of pavement. While the injured appellant testified that the car skidded once or twice before they reached San Bernardino on their return trip, there is no evidence that it had shown any signs of skidding while on a concrete pavement and the evidence shows without contradiction that he had theretofore trav-

eled with safety at a higher rate of speed for a considerable number of miles in the same rain. There were no other cars on the highway near this point. The driver testified that he believed the car was under control and that he was driving in a safe manner, and Mrs. Bamford testified that immediately before the accident the car was under control and that there was nothing in the manner in which it was being operated to indicate that it was going to skid, except the fact that the road was slick.

While this evidence with the reasonable inferences therefrom would support a finding of negligence, we think it is not sufficient under the established rule to sustain a finding of wilful misconduct. Any excessive speed which here appears is plainly attributable to a lack of care and not to a disregard of the probable consequences. While the driver of this car knew or should have known that an accident with the consequent injury to one of his guests was possible under the circumstances, we see in the evidence nothing to indicate that he knew or should have known that such an injury was probable. He had his own son in the car and the other passengers were his intimate friends. They were returning from a pleasure trip and were apparently anxious to get home. We may say here as we said of the driver in the case of *Howard* v. *Howard, supra.*

"It clearly appears that, although he proved to be mistaken, he thought he could safely drive as he did even though the pavement was wet; that while he intended to drive rather rapidly he neither intended the result that happened nor was indifferent to the same; and that he was far from being in such a frame of mind that he did not care whether or not he injured anyone. While this driver may have been negligent in a greater or less degree, in our opinion, no wilful misconduct within the meaning of this statute is disclosed by this evidence."

In our opinion the appellants have not met the burden of proof imposed upon them by the statute, and we think this case comes squarely within the class in which the legislature intended to deny a right of recovery to an injured guest.

For the reasons given the judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition by respondent to have the cause heard ·in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 14, 1935.