[Civ. No. 5326.   Third Appellate District.—November 1, 1935.]

ZELDA CANDINI, Respondent, v. LLOYD HIATT, Appellant.

Neumiller & Ditz and Dudley W. Sheppard for Appellant.

Gumpert & Mazzera and C. H. Hogan for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment for damages which was rendered against him for wilful misconduct in the operation of his automobile resulting in injuries sustained by a guest who was riding with him.

It is contended the evidence fails to show that the defendant was guilty of wilful misconduct and that the court erred in giving and refusing certain instructions.

There is a conflict of evidence, but we are of the opinion the implied findings and judgment are adequately supported by the record with respect to proof of wilful misconduct on the part of the defendant. Neither the seriousness of plaintiff's injuries nor the amount of the judgment is challenged.

While some of the circumstances are disputed, the following facts are sufficiently supported by the evidence. On the night of July 23, 1934, the defendant conveyed the plaintiff and her husband and one other passenger in his single-seated Studebaker coupe automobile from Manteca to Valley Springs on a pleasure expedition. The defendant drove his machine. His friend, Miss Douglass, sat by his side, and Mrs. Candini sat on her husband's lap on the extreme right-hand side of the seat. After arriving at Valley Springs they spent a couple of hours eating and dancing at a resort. The defendant drank a cocktail or two, but exhibited no evidence of intoxication. About 1 o'clock the following morning they started to drive back to Manteca. They were seated in the automobile in the same manner above described. It was dark. The lights and brakes of the machine were in good order. There was no mechanical defect in the car. The defendant drove along the paved highway at the rate of forty-five miles an hour. He was not familiar with the roadway, never having driven over it except on their journey to Valley Springs that night. As they approached the first abrupt turn in the highway about one-half mile from Valley Springs, Mr. and Mrs. Candini, who were well acquainted with the roadway, warned the defendant of the proximity of the sharp curve in the roadway and asked him to reduce the speed of his machine. He paid no attention to their warning, saying at the trial of the case, "I thought I would make it, and I did." There is evidence indicating that he barely escaped an accident at that first turn of the roadway. His machine skidded over on to the outer side of the pavement, but managed to hold its upright position and continue on its course. About a quarter of a mile beyond this first turn there is another abrupt angle in the highway which was well known to the plaintiff and her husband. When the machine reached a point about halfway between these two sharp turns both the plaintiff and her husband again warned the defendant that he could not make the turn unless he diminished his rate of speed. Mrs. Candini testified that she was "nearly frightened to death" at the rate of speed they were traveling and at the reckless manner in which the defendant operated the machine. She testified that when the machine was 300 feet from the second turn she said to him, "Slow down, as there is a curve just ahead." The defendant admits hearing her

warning. He not only disregarded the request, but he grinned at her and accelerated his speed. The plaintiff testified that she was terrorized at their danger and said to him, "Lloyd, stop and let me out." All of the occupants of the machine agree that both Mr. and Mrs. Candini warned the driver against the dangerous curve in the highway which they were approaching, and that the plaintiff protested against the rapid rate of speed. At the rate of at least fifty miles an hour the defendant attempted to traverse the second turn of the roadway. His machine swerved and skidded off the highway into a ditch on the left-hand side and then careened back across the pavement to the opposite side thereof and overturned. The plaintiff was seriously injured.

▮ The gist of the evidence which supports the implied finding that the accident occurred as a result of the wilful misconduct of the defendant is that with four persons crowded into one seat in his machine, and after ample warning and barely escaping an accident while driving around the first curve in the roadway at the rate of forty-five miles an hour, he immediately thereafter disregarded repeated warnings against his excessive speed and the danger of another sharp turn in the roadway just ahead of them, and defiantly grinned and recklessly increased the speed of his machine to fifty miles an hour in utter disregard of the grave danger to his passengers. He must have known and appreciated the great danger of repeating his experience of trying to traverse a sharp curve in the roadway at so high a rate of speed. Yet with reckless disregard of the lives of his passengers, he laughed at their fear and increased the speed of his machine. We are of the opinion this action constitutes wilful misconduct on his part.

Some discrepancies in the testimony are pointed out, and it is suggested that it is improbable that the plaintiff would have asked the driver of the machine to stop and let her get out. But all of the witnesses agree regarding the rapid rate of speed at which the machine was driven and that the defendant was warned of the danger of both curves in the roadway and failed to diminish his speed. The defendant himself admitted that he was driving his car forty-six miles an hour when he reached the first turn in the road, that he heard the plaintiff's warning and did not decrease the speed of his machine. ▮ Moreover, the credibility of witnesses and

the weight and sufficiency of the evidence are ordinarily matters for the exclusive determination of the jury. Under the circumstances of this case their province in that regard may not be interfered with.

Proof of wilful misconduct depends on the facts of each particular case. It may be said, however, that when it appears that a person deliberately performs acts which proximately result in the injuries complained of either with the intention to inflict injuries, or with the knowledge and appreciation that his acts are likely to result in injury, he is guilty of wilful misconduct. In the case of *Sanford* v. *Grady*, 1 Cal. App. (2d) 365, 371 [36 Pac. (2d) 652, 37 Pac. (2d) 475], quoting with approval from the case of *Norton* v. *Puter*, 138 Cal. App. 253 [32 Pac. (2d) 172], the following pertinent language was used with reference to the definition of wilful misconduct:

" 'Wilful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, *that danger is likely to result therefrom.* (*Helme* v. *Great Western Milling Co.*, 43 Cal. App. 416 [185 Pac. 510]; *Olson* v. *Gay*, 135 Cal. App. 726 [27 Pac. (2d) 922]; *Walker* v. *Bacon*, 132 Cal. App. 625 [23 Pac. (2d) 520]; *Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279].) Webster's New International Dictionary, page 1379, defines "misconduct" as "wrong or improper conduct; bad behavior; unlawful behavior or conduct, malfeasance." (40 C. J., p. 1221.) Wilfulness necessarily involves the performance of a deliberate or intentional act or omission regardless of the consequences. In *Helme* v. *Great Western Milling Co., supra*, it is said:

" ' "Wilful misconduct" means something different from and more than negligence, however gross. The term "serious and wilful misconduct" is described by the Supreme Judicial Court of Massachusetts as being something "much more than mere negligence", or even gross or culpable negligence, and as involving "conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequences." (*In re Burns*, 218 Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601].) The

mere failure to perform a statutory duty is not alone, wilful misconduct. It amounts only to simple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Smith* v. *Central etc. Georgia Ry. Co.*, 165 Ala. 407 [51 So. 792].)'' ' ''

■ The refusal of the court to give to the jury defendant's instruction number 11–A is not erroneous under the circumstances of this case. That offered instruction reads:

"While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. Wilful misconduct implies at least the intentional doing of something, either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.''

The jury was clearly instructed that it could render a verdict against the defendant only if it were satisfied that the plaintiff had affirmatively proved by a preponderance of the evidence that the defendant was guilty of wilful misconduct which was the proximate cause of the accident resulting in the injuries complained of. The following instruction which was given at the request of the defendant sufficiently covers the essential portion of the rejected charge. It reads:

"You are instructed that there is a clear distinction between the two terms, 'negligence' and 'wilful misconduct'. Negligence is defined in law as follows: 'Negligence means the want of such care as a person of ordinary prudence would exercise under the same or similar circumstances as proved in the given case.' 'Wilful misconduct' means something much more than mere negligence, or even gross negligence, and involves the intentional doing of something with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequence.''

In the instruction which was given to the jury ordinary negligence was defined, and the jury was told that mere proof of ordinary negligence *or even gross negligence* would not warrant it in finding the defendant guilty of wilful misconduct. Then the term "wilful misconduct" was clearly defined. As any person of common intelligence knows, the term "gross negligence" merely means an increased degree of ordinary negligence. (*Cook* v. *Cole,* 273 Mass. 557 [174 N. E. 271, 273].) The distinction between ordinary negligence and gross negligence does not appear to have been an issue in this case. We do not believe the jury could have been deceived by a failure to give a more specific definition of gross negligence. The refusal of the challenged instruction was therefore not erroneous.

■ Finally it is contended the court erred in instructing the jury that in assessing damages it might take into consideration "the amount, if any, which the plaintiff, Zelda Candini, has paid or become obligated *or will necessarily become obligated to pay* on account of the services of physicians, surgeons, nurses, hospital services, medicines and medical supplies", and for "the reasonable value of the time of the plaintiff, Zelda Candini, *during which she was disabled,* by reason of the injuries", since there is no evidence that she will incur future liability to pay any definite sum on that account.

The last clause of the preceding instruction does not inform the jury it may estimate damages based on future loss of time. It is confined to such loss of time in the past "during which she *was* disabled". The disability referred to relates only to the past tense.

The jury was further elsewhere instructed that it should allow only such damages as would compensate the plaintiff for the injuries she received, and that it was not proper to award damages based on sympathy or such as would be speculative or remote, and it was warned against attempting to measure the damages by trying to determine what sum of money it would be willing to accept for enduring such pain as the plaintiff suffered and such injuries as she sustained.

The preceding quoted excerpts from the challenged instruction are erroneous since there is no evidence upon which the jury could base an estimate of probable necessary future expenses or the value of the loss of plaintiff's household ser-

vices during her disability. However, we are of the opinion the giving of this instruction is not reversible error, and that, on the contrary, the judgment may be affirmed under the provisions of article VI, section 4½ of the Constitution, since the evidence, without substantial conflict, shows that the plaintiff was very seriously and permanently injured, and it may not be reasonably said the amount of the judgment is excessive if all question of future expense for medical care and the value of her loss of personal services are eliminated.

It satisfactorily appears that the plaintiff was a young woman of the age of twenty-three years and in excellent physical health and condition before the accident occurred. Two physicians testified to practically the same injuries which she received, and to substantially the same result of those injuries. There is no evidence to the contrary. No physician was called in behalf of the defendant. The plaintiff suffered a transverse fracture of the fifth cervical vertebra which has permanently affected her spinal cord canal and the nervous system; there was an eight-inch laceration over the right shoulder; there were other serious lacerations on the neck over the jugular vein and under the jaw which severed the muscles; the nerve supply for the right arm and shoulder was severed and destroyed or seriously impaired, with the result of a loss of sensation; the injury to the spinal cord has seriously affected the reflex action of her limb and knee; the right arm has lost 95 per cent of its efficiency; she cannot extend her forearm; she has lost the power to contract the muscles or grip an object with her right hand; she cannot comb her hair or dress herself or use this hand to perform her personal and household duties; the right shoulder is curved; certain severed muscles and tendons cannot be reunited; her physicians advised the plaintiff that another operation is necessary; her physical condition, as a result of her injuries, is extremely serious, painful and humiliating; several of her major injuries are permanent, as both doctors agree. Under such aggravated circumstances we may not say that a judgment of $12,557 is excessive, even though the elements of actual future necessary expense on that account and the value of loss of her time be entirely eliminated from consideration. For the reason that there appears to have been no miscarriage of justice in this case, we are of the

opinion the giving of the erroneous portions of the challenged instruction is not reversible error.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 30, 1935.