[Civ. No. 9929. First Appellate District, Division Two.—February 6, 1936.]

GERALDINE RODE, Respondent, v. VIOLA G. ROBERTS, Appellant.

James F. Hoey and Warren Cunningham for Appellant.

Thomas M. Carlson, Robert Collins and Orlin J. Bell for Respondent.

STURTEVANT, J.—While riding as the guest of her aunt, the defendant, in an automobile being driven by the latter, the plaintiff was injured in an automobile accident. In her action to recover damages for the injuries so sustained the jury returned a verdict in her favor. From the judgment entered thereon the defendant has appealed.

The plaintiff's complaint was based on the provisions of section 141¾ of the California Vehicle Act as amended by chapter 812 of the Statutes of 1931. The statute provides that in an action by a guest " . . . the burden shall be upon plaintiff to establish that such intoxication or wilful misconduct was the proximate cause of such death or injury or damage". In the instant case there was no claim that the defendant was intoxicated. In presenting her appeal the defendant contends that there was no evidence of wilful misconduct on her part. That is the sole question presented.

Both parties concede that the meaning of the words "wilful misconduct", as used in said statute, are fully defined in *Meek* v. *Fowler et al.*, 3 Cal. (2d) 420 [45 Pac. (2d) 194].) It therefore becomes necessary to ascertain the rights of the parties as measured by the doctrine stated in the Meek case and the cases there cited.

For some time prior to July 13, 1934, the plaintiff had resided on Lyon Street near the Presidio in San Francisco. A short time before that date she had been ill and confined in a hospital, but returned to her home on that date. Knowing of her convalescence, her aunt, the defendant, invited her to take a vacation at the aunt's home near Concord in the

county of Contra Costa. On the morning of July 16, 1934, the defendant, her husband, and Catherine Beam, their granddaughter, arose about 4 A. M. and drove to San Francisco. Mr. Roberts went to his place of business. Mrs. Roberts and Catherine later went to the plaintiff's residence where the plaintiff entered the defendant's car and they started for Concord. The defendant was driving, the plaintiff sat to her right, and Catherine sat behind the plaintiff. The record discloses no fault in the driving of the defendant until the automobile reached a point one mile west of where the accident occurred. The defendant was an experienced driver and had recently driven to Crescent City and back, being gone approximately two weeks. On the date of the accident she drove along the highway at a speed of approximately 25 or 30 miles per hour. When she reached a point about a mile and a quarter west of the Grant Miller pumping station on the highway leading from Orinda to Lafayette the plaintiff testified that the defendant yawned and at about the same time she allowed the left front wheel of the car to travel along the northerly side of the division line. The plaintiff testified that noticing these things, she asked the defendant if she wanted to stop and take a rest. The defendant replied that she was not tired and proceeded. The highway is 18 to 20 feet wide and on each side is a shoulder 2 to 3 feet wide. The record contains no evidence that the highway is filled in or that it rests on an embankment. While there was other traffic on the road, none is shown to have been in the immediate vicinity of where the accident occurred. No obstructions are mentioned excepting two telegraph poles, one on the right-hand side of the highway and one, farther east, on the left-hand side. Each one stood approximately 1½ to 3 feet from the shoulder. The road is straight. It was formerly a concrete road, but before the accident it had been rough-surfaced with macadam. The accident occurred at about 3:30 P. M. on July 16, 1934. There is no evidence that the road was wet from any cause whatever. The evidence shows that there was no loose gravel on the road, but on the outside of the shoulder there was some loose gravel. The record discloses no turns. The plaintiff testified that within the mile zone which we have mentioned at different times the defendant's car was partly or wholly on the left-hand side of the highway. When at a point about a quarter

of a mile west of the Grant Miller pumping station the car passed over the shoulder on the right-hand side. The driver made a quick turn of the wheel and the car passed the first telegraph pole, but the rear right-hand fender scraped it. The car then swerved across the highway in a northeasterly direction at an "unrelented" speed and hit the second telegraph pole about 148 feet farther east on the highway. That collision was of such force that both the defendant and the plaintiff were more or less injured. The plaintiff testified that just before the car swerved toward the first telegraph pole the following incident occurred: Plaintiff: "Let me get out, I don't want to be in an accident." Defendant: "I won't! I will drive this car as I please!" Catherine: "Oh!" Defendant: (half turning and boxing grand-daughter) "Keep still!" In the meantime, as all three of those witnesses testified, the defendant was vigorously turning the steering wheel. She said she was attempting to avoid any accident. She also testified that she put on the four-wheel brakes " . . . slowly, very little, because my instructions have always been in driving a car that becomes unmanageable, that if you throw your brakes on quickly and forcibly that you are apt to turn over, and for that reason I didn't throw my brakes on heavy for I didn't care to turn over". The defendant testified: "Before I hit the first pole, I felt that perhaps I was just a little bit off the highway, but I had struck a little rock. That is the way I felt. . . . The car became unmanageable and I was trying to keep it on the highway and I gave it a quick jerk, like this (indicating) to bring it back and it just seemed to catch at once and then it was out again. I just couldn't manage it." She saw the second pole, but she also saw a barbed-wire fence on her left, when, as she testified, she was attempting to avoid injuring her passengers and herself. The traffic officer who appeared shortly after the accident was told by one of the occupants of the car that the steering apparatus was out of order and caused the accident. The next day he called at the garage where the car was and manipulated the steering wheel. On the trial he testified that it was in working order. There was no other evidence as to whether the steering apparatus was or was not out of order. There was no evidence that the brakes were or were not out of order.

■ On the trial it was the theory of the plaintiff that because defendant got up at 4 o'clock she had become tired and worn out and had become drowsy. Conceding such to be the fact, if she drove the car while drowsy such fact might indicate negligence, but not wilful misconduct. However, there was no direct evidence the plaintiff was asleep and the oral conversations and other acts immediately before hitting the first pole and down to the time that the car collided with the second pole show that the defendant was not drowsy. Driving on the wrong side of the highway was in no manner connected with the accident. That driving occurred some distance back and at that time no accident followed as a result. There is not a particle of evidence that defendant intentionally drove off the highway. When off the highway from any cause whatsoever there is no evidence that she did not immediately attempt in all proper ways to get back on the highway. Speaking in anger to, and becoming angry with the plaintiff, does not justify the inference that the defendant did an act with knowledge that it would probably lead to the injury of her invalid niece and to the injury of herself and her granddaughter. The presumption is otherwise. (Code Civ. Proc., sec. 1963; *Lennon* v. *Woodbury*, 3 Cal. App. (2d) 595, 600 [40 Pac. (2d) 292].) As the second pole was in clear view and assuming that the defendant had actual knowledge of the peril to be apprehended, there is no evidence of defendant's failure to act, coupled with a conscious failure to act to the end of averting injury. However, those are elements which have been held necessary in establishing wilful misconduct. (*Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279].)

It follows that the evidence does not support the verdict. The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.