[Civ. No. 1316. Fourth Appellate District.—May 14, 1936.]

IRVING W. HALL et al., Appellants, v. VERNON R. MAZZEI, Respondent.

Everts, Ewing, Wild & Everts, A. W. Carlson, L. N. Barber and Farnsworth, Burke & Maddox for Appellants.

McFadzean & Crowe for Respondent.

MARKS, J.—This is an appeal from a judgment of dismissal entered after the trial court granted defendant's motion for nonsuit at the close of plaintiffs' case.

In plaintiffs' opening brief the sole question argued is: Where an automobile is driven by the daughter of the owner, with his express or implied consent, and a guest is injured through the alleged wilful misconduct of the daughter, is the father, owner, liable to respond in damages to the guest where the injuries were caused by the wilful misconduct of the daughter, driver, under the provisions of section $1714\frac{1}{4}$ of the Civil Code, and section $141\frac{3}{4}$ of the California Vehicle Act as in effect on August 25, 1931? Defendant argues this question in his brief and urges that the evidence fails to show Miss Mazzei, the driver, guilty of wilful misconduct.

Defendant was the owner of a Ford automobile which, on August 25, 1931, the day of the accident, was being driven by his daughter with his knowledge and consent. The accident happened on a clear day on a straight dry road about one and one-half miles north of Mooney's grove near Visalia in Tulare County.

Plaintiff Dorothy Hall was the only witness testifying as to the accident and the events preceding it. She testified that Miss Mazzei drove from Mooney's grove north on this road at a speed of forty-five miles an hour; that a Ford coupe passed her; that the windshield on the Mazzei car became loosened and was tightened by Miss Mazzei while she was driving at a speed of forty-five miles an hour. Plaintiff continued her testimony as follows: "Q. And while she was fixing this car the other machine passed and was immediately

in front of you? A. Yes sir. Q. Did that machine stay immediately in front of you? A. No. Q. And what happened to it? A. It kept going away from us. Q. Do you remember when Miss Mazzei finished tightening the windshield at that time? A. Yes. Q. Now at that time how far in front of your car was the car that had just passed you, approximately? A. Three to four hundred feet. Q. That car that had just passed you was approximately three to four hundred feet in front of you? A. Yes. Q. At that time and when that car was approximately three to four hundred feet ahead of you, you were still going forty-five miles an hour? A. Yes. Q. Now then just tell us what happened from then on. A. Well Miss —— after or when she was fixing the windshield I asked her to please slow down or stop because she had to reach out to fix this screw and that when she had one hand on the steering wheel and we were going fast and she wasn't holding the car any too steady and after she got the windshield tightened she started to gain on the car and started going faster, and by the time we caught up with the car and were even with the car and the highway is narrow and she did not get past and the car started to slip and she jerked it back onto the highway and went to run into the other car and the other car went out, swerved to one side and she jerked the car back out into the sand and as she jerked it back it turned over. Q. At the time that you were just about to pass this other automobile, how fast would you estimate the speed of the car driven by Miss Mazzei? A. At least sixty. Q. Yes. Now was there any conversation at that time between you and Miss Mazzei? A. Yes. Q. What was that? A. Well just as we caught up to the car, I had driven the car quite a bit and I realized it was almost impossible to pass the car, that the road was too narrow and the sides of the highway had just been worked on and this soft shoulder and I asked her not to try to pass the car because it was going fast itself. Q. What did you say; what words did you use? A. Let's not try to pass it. Q. And what did she say? A. She didn't say anything. Q. What did she do? A. She just laughed and kept on. Q. That highway you say is narrow. Do you know how wide it is? A. Around fifteen feet . . . Q. Now what was the condition of those shoulders at that time, Mrs. Hall? A. Well the ground was soft. Q. Was it smooth like it is now? A.

No. Q. When the car turned over, what happened to you? A. I was thrown out onto the highway and she was on the lefthand side of the highway and when the car turned over it turned over on my side and threw me onto the highway. Q. You were thrown clear of the car? A. Yes sir.''

Wilful misconduct has been so frequently defined that it seems unnecessary to repeat that definition here. (See *Meek* v. *Fowler*, 3 Cal. (2d) 420 [45 Pac. (2d) 194]; *Lennon* v. *Woodbury*, 3 Cal. App. (2d) 595 [40 Pac. (2d) 292], and cases there cited.)

In both the foregoing cases excessive speed alone was held not sufficient to constitute wilful misconduct. What was said on the question of excessive speed in the Lennon case is applicable here:

''While this evidence with the reasonable inferences therefrom would support a finding of negligence, we think it is not sufficient under the established rule to sustain a finding of wilful misconduct. Any excessive speed which here appears is plainly attributable to a lack of care and not to a disregard of the probable consequences. While the driver of this car knew or should have known that an accident with the consequent injury to one of his guests was possible under the circumstances, we see in the evidence nothing to indicate that he knew or should have known that such an injury was probable. . . . We may say here as we said of the driver in the case of *Howard* v. *Howard, supra*. (132 Cal. App. 124 [22 Pac. (2d) 279].) 'It clearly appears that, although he proved to be mistaken, he thought he could safely drive as he did even though the pavement was wet; that while he intended to drive rather rapidly he neither intended the result that happened nor was indifferent to the same; and that he was far from being in such a frame of mind that he did not care whether or not he injured anyone. While this driver may have been negligent in a greater or less degree, in our opinion, no wilful misconduct within the meaning of this statute is disclosed by this evidence.' ''

In the instant case excessive speed seems to be the only real basis upon which Miss Mazzei could be found guilty of wilful misconduct. The operation of adjusting the windshield had been completed at a considerable distance from the place of the accident. There were soft shoulders on both

sides of the pavement but the pavement was of sufficient width to permit her to drive at a speed of even sixty miles an hour and safely pass the only other car in the neighborhood without serious danger of leaving the pavement. It was careless of Miss Mazzei to permit her car to leave the pavement, but there is nothing to indicate that such an act was the result of anything more than her negligence. It was a momentary lapse in the exercise of care that had disastrous results and caused her death and the serious injury of her friend. Had the automobile remained on the pavement it is highly improbable that there would have been an accident. We cannot conclude from the evidence that Miss Mazzei, at the time and place of the accident, intentionally did something in the operation of her motor vehicle which she should not have done, or intentionally failed to do something she should have done "under circumstances disclosing knowledge, express or implied, that an injury to a guest will be a probable result" (*Turner* v. *Standard Oil Co.,* 134 Cal. App. 622 [25 Pac. (2d) 988]), which elements are necessary to establish wilful misconduct on her part.

We do not wish to be understood as holding that mere speed may never constitute wilful misconduct if indulged in under certain conditions. Wilful misconduct, like negligence, must relate to the time, place, person and surrounding circumstances, and must be measured by them. Excessive speed under some circumstances may amount to negligence, under others to gross negligence, and under still others to wilful misconduct. In the instant case circumstances sufficient to constitute wilful misconduct are not disclosed by the record.

Counsel for both parties have argued at length the question of the liability of the owner of an automobile, who permits another to drive it, for damages to a guest caused by the wilful misconduct of the driver. This court has already expressed its views on this question. (*Meek* v. *Fowler,* (Cal. App.) 35 Pac. (2d) 410.) We still adhere to the views there expressed after carefully considering the case of *Gimenez* v. *Rissen,* 12 Cal. App. (2d) 152 [55 Pac. (2d) 292], where a contrary conclusion is reached. It is unnecessary for us to consider this question at length here, as whatever we might say upon it would be *dicta* in view of our conclu-

sion that the evidence failed to establish wilful misconduct on the part of Miss Mazzei.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.