[Civ. No. 11292. Second Appellate District, Division One.—August 13, 1937.]

MAE JONES, Respondent, v. C. B. HATHWAY, Appellant.

Rogers & Rogers, Merle J. Rogers and Burton L. Rogers for Appellant.

W. Stuart Smith and James C. Hollingsworth for Respondent.

HOUSER, P. J.—The pertinent facts herein appear to be that a Mr. John Hansen was the owner of an automobile, in which he transported his wife, plaintiff and defendant from the city of Santa Barbara to the city of Los Angeles. After the party had arrived in the vicinity of the latter city, for the asserted reason that defendant was better acquainted with the streets thereof than was the owner of the automobile, "Hansen turned the wheel over to Hathway, and from that time on Hathway was the driver of the car", not only while within the city of Los Angeles, but also including the time occupied on the intended return of the party to the city of Santa Barbara. During the latter part of the journey the automobile collided with an abutment of an underpass on the highway, with the result that by reason of said collision both John Hansen and his wife lost their lives and plaintiff was seriously injured. To recover a judgment against defendant for the damages thus sustained by her, plaintiff brought the instant action against him. From an ensuing judgment in favor of plaintiff, defendant has appealed to this court.

Section 141¾ of the California Vehicle Act (Stats. 1931, chap. 812), in effect at the time when the accident occurred, provided in part as follows: "Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of California, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . . Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately

resulting from the intoxication or wilful misconduct of such owner, driver or person responsible for the operation of such vehicle; . . . ''

In accordance with rights conferred by the provisions of the foregoing statute, the complaint in the action contained two counts, one based upon the alleged intoxication of defendant, and the other upon his alleged wilful misconduct while driving said automobile. As a result of the trial, it was found that at the time in question defendant was neither intoxicated nor under the influence of intoxicating liquor, but that it was true that ''in so driving said automobile at said time and place, the said defendant C. B. Hathway was guilty of wilful misconduct''.

Furthermore, as having a bearing upon the question of the wilful misconduct of defendant, among other facts the trial court found that for a considerable period of time preceding the date when the accident occurred defendant ''had been entirely familiar with said highway and said bridge abutment''; that the said underpass was ''in the shape and form of an 'S' curve, with a sharp down-grade entering into said underpass''; that ''at a place on said highway approximately fifteen miles easterly from where said accident occurred, (defendant) did by his driving and operation of said motor vehicle cause the same to skid very badly upon the highway; that at said time plaintiff remonstrated with said defendant C. B. Hathway to slow down, and said defendant replied and said that there was nothing wrong except the air in the tires was somewhat deflated, which in truth and in fact was not the case, although said plaintiff at said time did not know that said tires were properly inflated and in good condition''; that when within three-quarters of a mile to one mile of the place where said accident occurred, and when defendant was driving said automobile at a rate of speed of from 55 to 60 miles per hour, ''in a dense and heavy fog, which condition prevented said defendant C. B. Hathway from seeing farther ahead on said highway than a distance of seventy-five to one hundred feet . . . the said plaintiff cautioned defendant C. B. Hathway not to drive said vehicle in such a manner, but defendant then and there refused and failed to alter or change the manner or method in which he was driving and operating said vehicle''; that while traveling as aforesaid, and when within approximately a quarter of a mile from the underpass,

"the said defendant cut in ahead of another vehicle being then and there operated in a general westerly direction and on the right-hand side or north side of said highway and in its proper place thereon; that when cutting in ahead of said other vehicle, the said defendant C. B. Hathway caused the driver of said other vehicle to drive the same onto the north edge and dirt shoulder of said highway in order to avoid being struck by the vehicle which the defendant C. B. Hathway was then and there operating". The evidence further shows that although defendant was not intoxicated, nevertheless, that theretofore during the day of the accident he had been indulging in drinking beer, and other liquors of alcoholic content at least as great as that ordinarily contained in beer.

The controlling question that is presented on the instant appeal is whether the evidence was sufficient to support the judgment that was based upon the wilful misconduct of defendant. In that connection, each of the parties to this appeal has directed the attention of this court to many different cases that heretofore have been decided by the appellate tribunals of this state, in each of which the words "wilful misconduct" were not only considered and defined, but also wherein the term was applied to the particular conditions and circumstances that were present in the case there at issue. (*Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194]; *Parsons* v. *Fuller,* 8 Cal. (2d) 463 [66 Pac. (2d) 430]; *Helme* v. *Great Western Milling Co.,* 43 Cal. App. 416 [185 Pac. 510]; *Howard* v. *Howard,* 132 Cal. App. 124 [22 Pac. (2d) 279]; *Walker* v. *Bacon,* 132 Cal. App. 625 [23 Pac. (2d) 520]; *Turner* v. *Standard Oil Co.,* 134 Cal. App. 622 [25 Pac. (2d) 988]; *Olson* v. *Gay,* 135 Cal. App. 726 [27 Pac. (2d) 922]; *Norton* v. *Puter,* 138 Cal. App. 253 [32 Pac. (2d) 172]; *Manica* v. *Smith,* 138 Cal. App. 695 [33 Pac. (2d) 418]; *Horning* v. *Gerlach,* 139 Cal. App. 470 [34 Pac. (2d) 504]; *Lennon* v. *Woodbury,* 3 Cal. App. (2d) 595 [40 Pac. (2d) 292]; *Gieselman* v. *Uhlman,* 7 Cal. App. (2d) 409 [45 Pac. (2d) 819]; *Newman* v. *Solt,* 8 Cal. App. (2d) 50 [47 Pac. (2d) 289]; *Candini* v. *Hiatt,* 9 Cal. App. (2d) 679 [50 Pac. (2d) 843]; *Rode* v. *Roberts,* 11 Cal. App. (2d) 638 [54 Pac. (2d) 498]; *Bartlett* v. *Jackson,* 13 Cal. App. (2d) 435 [56 Pac. (2d) 1298]; *McLeod* v. *Dutton,* 13 Cal. App. (2d) 545 [57 Pac. (2d) 189]; *Hall* v. *Mazzei,* 14 Cal. App. (2d) 48 [57 Pac. (2d) 948]; *Frisvold* v. *Leahy,* 15 Cal. App. (2d)

752 [60 Pac. (2d) 151]; *Weber* v. *Pinyan,*■ (Cal. App.) [61 Pac. (2d) 954]; *McCann* v. *Hoffman,*▮ (Cal. App.) [62 Pac. (2d) 401].)

As might be anticipated, from an examination of such cases it may be noted that, especially with respect to the definition of the term "wilful misconduct", the several courts are not entirely in harmony one with the other or the others. ■ However, as this court understands the situation thus created, the consensus is to the effect that the term "wilful misconduct" properly may be applied where it appears that either the negligent act or the negligent omission of which complaint is made is coupled with either an actual or an implied consciousness on the part of the person charged that his negligent act or his negligent omission is likely to result in injury to his guest; and that with such basic principle as a guide, a question as to whether a given act or omission constitutes "wilful misconduct", for its determination stands on a plane identical with that upon which properly may be rested a conclusion as to whether given conduct amounts to negligence.

■ With so much in mind, together with the rule that as far as the ultimate fact of wilful misconduct itself is concerned, a determination thereof by the trial court based upon substantial evidence in its support is conclusive on appeal, the determination of the question of whether as a matter of law the judgment in the instant case is sustainable becomes one largely of individual judicial opinion. With reference to a decision by this court on the issue which has been here presented, it is concluded that, as a presumably reasonable man, had he exercised due care, defendant must have known, or must have been conscious of and appreciated the fact that to drive an automobile at the place where, and under the atmospheric conditions which were shown to exist, over a wet and slippery pavement, and at the rate of speed at which, according to the findings of fact, he did drive it, was likely to result in injury to plaintiff. To say that the conduct of defendant

in thus driving an automobile was wanton or reckless, or that it was in disregard of probable consequences thereof, is but to express a patent and unmistakable truth. As far as substantial evidence in support of the judgment is concerned, it would seem at least questionable if nothing more appeared than the fact that, over the protest of plaintiff, defendant drove the automobile at night at the rate of 55 to 60 miles per hour; but when to that fact are added the further conditions that such speed was continued over a wet and slippery pavement,—through a fog so dense that he could see no farther than 100 feet,—up to and immediately preceding an "S" curve in an underpass which occurred at the foot of "a steep down-grade", it would be contrary to common sense to attribute to any reasonable person a lack of appreciation of the fact that such driving of an automobile was likely to result disastrously.

The judgment is affirmed.

York, J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 16, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 11, 1937.