[Civ. No. 3105.   Fourth Dist.   Aug. 26, 1943.]

GRACE PHILLIPS, Appellant, v. JAMES C. HARPER
et al., Respondents.

Laurenz J. Krueger and Kendall & Howell for Appellant.

West & Vizzard for Respondents.

GRIFFIN, J.—Jack D. Christiansen, aged 19, son of plaintiff and appellant Grace Phillips, was killed on February 2nd,

1942, on U. S. Highway No. 99, 13 miles south of Bakersfield, while riding in a 1936 convertible Ford coupé owned by defendant and respondent Ruth H. Harper and driven by her son, defendant and respondent James C. Harper, aged 19, with the consent of his mother. Defendant James C. Harper, called as a witness under section 2055 of the Code of Civil Procedure, testified generally that he lived in Whittier; that Jack lived in Los Angeles; that he and Jack were employed as civilian employees at Minter Field, about 15 miles west of Bakersfield; that each took a Ford automobile owned by their respective mothers to Bakersfield with them; that since January 5, 1942, they had been living in Bakersfield as roommates; that on Saturday, January 10, 1942, they both drove home to Los Angeles in their respective cars and returned in Jack's car; that the next week-end they went to Los Angeles in Jack's car; that each took his own car back to Bakersfield that week-end; that on the following week-end, January 24, 1942, they went to Los Angeles in James's car but that Jack drove; that on January 31, they went home to Los Angeles in James's car and returned Sunday night, February 1, leaving Jack's home about 11 p. m.; that Jack wanted to leave at an earlier hour but that he, James, wanted to go to a party; that they picked up another boy named Harold; that all three boys were seated in the front seat and that James was driving; that at around 1:20 a. m. they arrived at Gorman and all had "cokes"; that it had not been raining; that the road was "absolutely dry"; that he had not used his windshield wiper; that his lights were good and that he could see ahead without any trouble; that the brakes on his car were good. He then testified that in the second week in January he obtained a spare tire from Jack in Whittier; that he asked him if he could borrow the tire and he said "sure"; that the borrowed tire had been on his car since that time; that they didn't have any understanding in regard to the use of their respective cars. He testified that there was nothing said by Jack or him as to any compensation due for the loan of the tire; that he would have given him a ride just the same; that up to Gorman and thereafter he had traveled around 50 or 55 "maybe up to 65" miles per hour except for the turns where he slowed down; that his dashlight was not on; that Jack and Harold both went to sleep just north of Gorman; that he didn't feel drowsy but that he guessed he "must have

been.'' When asked as to whether or not he fell asleep he said: ''I don't know for sure, I guess so, I don't remember anything about the accident . . . so I guess I did''; that the next thing he knew he awakened in the hospital where he remained until April 12. He suffered a fractured pelvis, concussion of the brain, fractured nose, and scratches all over him; that he told his mother he thought he went to sleep at the wheel.

Paul S. Smith testified that he was proceeding north on Highway No. 99 in his car and near the scene of the accident he was traveling about 35 miles per hour in the right-hand lane of the four-lane highway; that several cars had passed him; that one of them, while overtaking him, struck his car lightly near the left rear fender, passed on ahead of him and apparently veered off to the left-hand side of the road and struck a tree. The car was wrecked. The passengers were thrown out ahead of the wrecked car. One was underneath it and the other two boys were 25 to 40 feet from it. He testified that he went for help, which took 15 to 20 minutes; that an officer arrived on the scene. The officer found James severely injured. Harold and Jack were killed in the accident.

The officer testified that he spoke to James and asked him what caused the accident and that James said ''just too damned much speed''; that he though he was going between 55 and 60 miles per hour but did not know; that ''he possibly had fallen asleep.'' James testified that he was unconscious and did not remember making any such statements to him. The officer further testified that at the scene of the accident the road was ''wet''; that it had been raining; that in going to the scene of the accident he traveled around 60 miles per hour and had no trouble in holding the road at that speed; that the pavement at that place was of asphalt and concrete mixture and was not as slippery as other types. The witness Smith then testified that he observed James until the time he was taken away in the ambulance; that he was groaning and mumbling and seemed to be entirely incoherent; that he didn't hear James tell the officer about the speed of the car as above related; that as to the weather, the road was wet, there ''might have been a fog''; that he was using his windshield wiper. However, he testified that when James's car hit the palm tree he ''saw a big cloud of dust that rose from the tree, presum-

ably from the car, obstructing the details for some little time.''

The trial of the issues here presented was had without a jury. The case was submitted to the trial court without argument. It found: (1) that Jack Christiansen was riding as a guest and not as a passenger for hire in the automobile operated by James C. Harper; (2) that Harper negligently drove his automobile and as a proximate result thereof Jack D. Christiansen was killed, but that his death did not proximately or otherwise result from any *wilful misconduct* of defendant Harper. Judgment in favor of all defendants followed.

Plaintiff appealed and argues that the uncontradicted testimony shows, as a matter of law, that Jack was a passenger for compensation, citing such cases as *Crawford* v. *Foster,* 110 Cal.App. 81 [293 P. 841], *Parrett* v. *Carothers,* 11 Cal.App.2d 222 [53P.2d 1023], and *Peccolo* v. *City of Los Angeles,* 8 Cal.2d 532 [66 P.2d 651]. The trial court, under the evidence, might well have believed that the automobile trip during which the decedent Jack D. Christiansen was killed was a pleasure trip and not a business trip; and, too, that the evidence established that the automobile tire was not loaned to Harper as a consideration or compensation for riding in his car.

The abstract propositions of law stated in the cited decisions seem to be sound and do apply reasonably to the facts there involved. However, each case must stand upon its own set of facts and the propositions of law which the courts declare must necessarily be applied to the evidence in each particular case. The evidence in this case shows that the boys had established places of abode in Bakersfield. It was only for a week-end vacation that they journeyed to Los Angeles. The trip upon which the decedent was killed does not therefore come under the classification of business, such as might a trip from the boarding house in Bakersfield to Minter Field. The guest cases draw a sharp distinction between business trips and pleasure trips, and these authorities have been collected in the case of *McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909]. Under the authority of that decision the trial court was fully justified in this case in holding that the deceased was a guest and not a passenger for compensation, that the loan of the tire was not considered as compensation

for the ride, and that there was no agreement, express or implied, between the parties to that effect.

It is next contended that even if the deceased were a guest, the uncontradicted evidence shows that James was guilty of *wilful misconduct as a matter of law.* In the first place the evidence is not uncontradicted. The speed at which James was traveling is open to conjecture. Speed alone does not necessarily of itself prove wilful misconduct. (*Stacey* v. *Hayes,* 31 Cal.App.2d 422 [88 P.2d 165] ; *Robertson* v. *Brown,* 37 Cal. App.2d 189 [99 P.2d 288].)

The testimony of James indicates that he had no recollection of the collision itself. He attributes such lack of knowledge to the assumption that he fell asleep. This may have been a conclusion of the witness. A person who has suffered a severe concussion of the brain may have a lapse of memory as to the blow or impact causing the concussion and as to the facts and circumstances occurring shortly thereafter or even before the impact. (*Hoppe* v. *Bradshaw,* 42 Cal. App. 2d 334, 339 [108 P.2d 947].)

Wilful misconduct has been so many times defined by the appellate courts of this state that further definition is probably redundant. (See *Meek* v. *Fowler,* 3 Cal.2d 420 [45 P.2d 194] ; *Lennon* v. *Woodbury,* 3 Cal.App.2d 595 [40 P.2d 292].) In *Rode* v. *Roberts,* 11 Cal.App.2d 638, 642 [54 P.2d 498], it is said:

''On the trial it was the theory of the plaintiff that because defendant got up at 4 o'clock she had become tired and worn out and had become drowsy. Conceding such to be the fact, if she drove the car while drowsy such fact might indicate negligence, but not wilful misconduct.'' (See also *Forsman* v. *Colton,* 136 Cal. App. 97 [28 P.2d 429].)

Upon the authority of the cases cited and under the evidence, it seems to us that the conclusion is inescapable that the trial court was fully justified in holding that there was substantial evidence that the defendants were not chargeable with wilful misconduct. Since it cannot be said that the evidence shows *wilful misconduct as a matter of law,* the trial court's finding will not be disturbed on appeal.

Judgment affirmed.

Barnard, P. J., concurred.