[Civ. No. 9970. First Appellate District, Division Two.—April 29, 1936.]

BARBARA McLEOD, a Minor, etc., Respondent, v. DAVID C. DUTTON et al., Appellants.

M. D. McLEOD, Respondent, v. DAVID C. DUTTON et al., Appellants.

L. R. Weinmann, Weinmann, Quayle & Berry and Carlisle C. Crosby for Appellants.

Elliott Johnson and Jesse E. Nichols for Respondents.

STURTEVANT, J.—Barbara McLeod, a minor, while riding as the guest of David C. Dutton, Jr., was injured in an automobile accident. David C. Dutton, Jr., being a minor, the plaintiff joined his father and mother as defendants. M. D. McLeod, Barbara's father, commenced a separate action against the same defendants to recover his damages. The actions were consolidated and tried together. The jury returned verdicts in favor of the plaintiffs and from the judgments entered thereon the defendants have appealed.

Among other points the defendants contend that the evidence will not support a finding that the defendant David C. Dutton, Jr., was guilty of wilful misconduct and therefore both judgments lack evidentiary support. Turning to the brief of the plaintiffs the following facts appear. On the night of the 21st of December, 1933, David C. Dutton, Jr., a student in the San Rafael Military Academy, had assembled in a Cord sedan as his guests, the plaintiff Barbara McLeod, and Richard Leighton, who were seated on the rear seat, and Eleanor Gaddes, who was seated on the driver's right. They were on their way to attend a dance at the academy. Their automobile was on the front end of the Richmond-San Rafael ferry. On the same boat was Eugene R. Billet, another student of the academy, who had assembled in his Packard as his guests, Elmer Sammann and Evelyn Jurs, who were seated on the rear seat, and Miss Barton, who was seated at Billet's right. Billet and his guests were also on their way to attend the same dance. While on the ferryboat the two parties met and held some conversation. Billet stated that he bet he would get to the dance first. To that remark Dutton replied, ''Not if I can help it,'' or ''We will see about that,'' or words to that effect. Dutton's car was the first to leave the ferryboat.

Immediately adjacent to the ferry slip the road runs along a bluff. At once Dutton's car set a high speed. The Packard did the same and followed 40 or 50 feet back. After leaving the bluff the highway is laid on level ground. Soon after reaching the level ground the Packard car pulled ahead of the Cord car. Both cars proceeded at a rate of speed variously estimated at from 50 to 60 miles per hour. At a point approximately three miles from the ferry slip the Packard car slowed down somewhat and the Cord proceeded to pass the Packard on its left-hand side and at a speed which was testified as being 73 miles an hour. Having passed the Packard, the Cord pulled to the right and into the right-hand lane. As stated above, these things occurred shortly after 9 P. M. There was evidence that the night was foggy. As to the exact condition in that respect at the place of the accident the evidence is conflicting. The lights on the Cord and on the Packard were burning. On Dutton's right as he was in the act of passing the Packard car there was a large traffic sign ''Slow''. Dutton testified that he knew of the existence of that sign, but on the occasion of the accident it had escaped his memory.

At this point we will pause to state that the sign just mentioned is on the north side of the highway leading from San Rafael to San Quentin Point and 100 yards more or less east from a point where the highway leading from San Rafael to San Quentin Point forks with the main highway leading from San Rafael to Sausalito. The highway first mentioned is a continuation in a straight line from San Rafael, but the other described an arc to the south. Mr. George A. Carroll, his wife, and Mrs. Custer had driven to Petaluma and were returning to the Richmond-San Rafael ferry to cross to their home in Berkeley. Mr. Carroll was doing the driving. When he reached the fork in the roads, not being familiar with that neighborhood, he made a mistake and started toward Sausalito. Near by and at his right was a gas station. There he turned around, passed back to the fork and turned to go toward San Quentin Point. In attempting to make that turn he crossed over the white line that divides the San Quentin road into two lanes. He was driving a Dodge. When the front half of his car was on the north side of the white line and the rear half was on the south side of the white line the Cord came forward, at-

tempted to pass on the north side, but failed in the attempt, and the collision occurred.

David C. Dutton, Jr., testified that before turning out from behind the Packard he did not see the Dodge, nor did he see it until he swung his car to the right and the Dodge was then about 125 feet away. He threw on his brakes and attempted to pass the Dodge on his right. There is no evidence that, before seeing the Dodge, Dutton had seen or been informed of any obstruction whatever in the highway. There was evidence that Barbara stated to him, "Don't you think you are going too fast and you better slow down." Continuing she stated that the reply she received was sort of a grin and a laugh and he seemed to increase the speed of his car.

F. R. Middagh, a traffic officer, went to the scene of the accident almost immediately after the accident happened. He assisted in taking the injured to the hospital. At the hospital he held a conversation with David C. Dutton, Jr. Middagh testified that in that conversation, speaking of the lights on the Dodge, Dutton stated that the lights could be seen; that it appeared the car was moving very slowly or had stopped; that apparently the driver of the Dodge car was uncertain of his path and he was traveling very slowly; and that when he first saw the lights on the Dodge he had rounded the corner of the cut which is a little past the sign that reads, "To Richmond Ferry". Afterwards Middagh went down and measured with the automobile speedometer. The distance is three-tenths of a mile. The officer was not asked and he did not testify as to where Dutton said the Dodge was when it was so seen by him. Dutton testified that before he passed the Packard he looked to the front and he looked to the rear and it was absolutely dark. He did not see any lights at all except the tail-light of the Packard. Neither did he see any object ahead. The road appeared to be clear.

■ That the foregoing evidence shows the driver of the Cord car committed acts of negligence is not to be debated. Indeed, it may be argued that his acts constituted gross negligence. (*Kastel* v. *Stieber*, 215 Cal. 37 [8 Pac. (2d) 474].) However, the evidence carries us no further. (*Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279].) In that case, at page 129, the court said: "The mere failure

to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute wilful misconduct there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.'' In *Meek* v. *Fowler*, 3 Cal. (2d) 420 [45 Pac. (2d) 194], the court said: ''The phrase wilful misconduct as employed in our so-called guest statute, has been variously defined in the many cases that have had occasion to consider the same. We shall not attempt to reconcile the several definitions and applications given to this phrase. It is satisfactorily defined in *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622, 626 [25 Pac. (2d) 988], wherein it is declared that wilful misconduct, within the meaning of this statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something that should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.'' In the instant case if it be assumed that the driver of the Cord car intentionally raced it, that he intentionally ignored the ''Slow'' sign, and that he did such acts in the dark on a foggy night, those facts, standing alone, did not constitute wilful misconduct. The record must further show that such acts were done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result. The latter factors are wholly absent in the instant case.

The fact, if it be a fact, that David C. Dutton, Jr., saw the Dodge car when it was three-tenths of a mile away, does not change the result. There is nothing in the evidence disclosing that when he attempted to pass the Packard car he knew, or had any reason to know, that the Dodge car was a short distance ahead on his left-hand side of the road and in a position practically broadside to the course of travel.

Whatever might be the force and effect, in an action based on simple negligence or gross negligence, of Barbara's caution about fast driving and to slow down, it is clear from what has been said that such evidence did not prove nor

tend to prove knowledge of the presence of the Dodge car nor its position.

The plaintiffs cite and rely on *Olson* v. *Gay,* 135 Cal. App. 726 [27 Pac. (2d) 922] , *Gieselman* v. *Uhlman,* 7 Cal. App. (2d) 409 [45 Pac. (2d) 819], and *Candini* v. *Hiatt,* 9 Cal. App. (2d) 679 [50 Pac. (2d) 843]. No one of those cases is at variance with anything we have said. In each one the driver either knew or was informed of a certain impending danger ahead—a string of trucks and trailers occupying the highway, a steam train approaching the highway crossing, or an exceptionally sharp and dangerous turn in the highway.

Having reached the foregoing conclusions it is unnecessary to discuss the other points presented by the defendants.

The contention that the plaintiffs' evidence did not show wilful misconduct was presented by a motion for a nonsuit at the conclusion of the plaintiffs' case; likewise by a motion for a directed verdict at the conclusion of the entire case. After the jury had brought in its verdicts and before judgments were entered the defendants made a motion for judgment notwithstanding the verdict. Still later a motion for a new trial was made and the same point was presented. Those motions were denied. It is sufficient to say the trial court erred in denying the motion for judgment notwithstanding the verdict.

It follows that the judgments should be and they are reversed and the trial court is directed to grant the motions for judgment notwithstanding the verdict.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1936.