[Civ. No. 12900. Second Dist., Div. Two.—April 23, 1941.]

ROSE KATZ et al., Appellants, v. BETTY KUPPIN, Respondent.

Roy H. Smith and P. V. Davis for Appellants.

Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury and White McGee, Jr., for Respondent.

MOORE, P. J.—Plaintiffs appeal from a judgment of nonsuit in an action for damages for personal injuries sustained while riding as guests with defendant in her automobile.

About 2 o'clock A. M., on February 3, 1939, defendant drove her Terraplane coupe, accompanied by her two guests, the plaintiffs Rose Katz and Mrs. Sophronia Ray, upon a wide, paved boulevard some five miles east of Brawley. The weather was clear and dry and the moon was brightly shining. On their way to Los Angeles the parties had taken the wrong road at Brawley. While driving along this boulevard, at a speed in excess of 70 miles an hour, at a curve, the coupe ran off the road into a ditch and the guests were injured. Because of such speed, of the protests thereat voiced by plaintiffs and of the curve in the road, plaintiffs claim that the accident was the result of defendant's wilful misconduct.

We are to determine (1) whether the evidence introduced by plaintiffs and all just inferences show that the injuries suffered proximately resulted from wilful misconduct, and (2) whether the court erred in making its order of non-suit at the close of plaintiffs' case.

Plaintiffs testified that, after leaving Brawley, Miss Katz requested defendant on several occasions to diminish her speed; that she complied but then gradually accelerated her speed and became angry at the admonitions. Mrs. Ray testified that on three occasions she had cautioned defendant against driving so rapidly.

Defendant was driving in the early hours of the morning on a dry pavement, on the right hand side of the highway free of traffic, and the moon was shining so that it was almost as bright as day. No maps were introduced in evidence and no description of the curve was given by any witness except that of Miss Katz who described it as a right hand curve. Sophronia Ray testified: ''I could see the curve way ahead''.

When asked if she had said anything to Miss Kuppin about a curve being there, she answered: "No, because I was talking to her about driving so fast and asked her to slow up." From the context of the testimony of Miss Katz, nothing would indicate that she meant anything other than that the curve was a turn to the right and not a right angle turn.

The evidence affords no basis for comparing the speed of defendant with that of a motorist approaching a known danger. The evidence does not establish a case of wilful misconduct as defined in *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622 [25 Pac. (2d) 988], where it is held that two essentials must exist: (1) An intentional act or an intended failure to act, (2) under circumstances showing knowledge, express or implied, that injury to a guest will be a probable result. Driving at a speed in excess of 70 miles per hour, along an open country highway at 2 o'clock in the morning, in clear weather, under a bright, moonlit sky, is not of itself sufficient to impute to the driver the knowledge that an accident will probably happen. Neither can knowledge of probable injury be implied from the fact of the curve in the road. There is no evidence that defendant was driving in an erratic manner or that she knew that she was approaching a dangerous curve. Nothing was offered as to the nature or degree of that curve. No testimony appears in the record to show that defendant saw, knew of, or had her attention directed to the curve or that she knew that any specific peril lay ahead.

The fact that a guest expresses dissatisfaction with the manner of the operation of an automobile does not *ipso facto* establish wilful misconduct on the part of the driver. Plaintiffs' contention that defendant became angry on being requested to decelerate her speed is unimportant. It does not justify the inference that she acted with knowledge that under the circumstances, it would probably lead to injury to her guest and herself. (*Rode* v. *Roberts*, 11 Cal. App. (2d) 638 [54 Pac. (2d) 498].) The presumption is otherwise. (*Ibid.*)

Wilful misconduct is not to be inferred from the circumstances detailed in this case. Where a motorist had been requested to reduce his speed, raced with another car at a speed exceeding 50 miles per hour on a foggy night, pulled to the wrong side of the road at a speed of 73 miles

an hour, intentionally disregarded the "slow" sign to pass his rival in the race, then swung back to the right hand side only to collide with a third car crossing the highway, it was held that these facts, standing alone, did not constitute wilful misconduct. Under such circumstances, the record *must further show that such acts were done under circumstances disclosing knowledge on the part of defendant that an injury to his guest would be a probable result.* (*McLeod* v. *Dutton,* 13 Cal. App. (2d) 545 [57 Pac. (2d) 189].) This and kindred authorities establish the law to be that, in the absence of proof of (1) a positive intention to injure his guests, or (2) his wanton disregard for their safety, the fact of his driving at an excessive speed on a dry, wide highway, free of traffic in the early hours of the morning, in the bright moonlight, even though objections were voiced to the rate of his travel, will not establish wilful misconduct. (*Newman* v. *Solt,* 8 Cal. App. (2d) 50 [47 Pac. (2d) 289]; *Hall* v. *Mazzei,* 14 Cal. App. (2d) 48 [57 Pac. (2d) 948]; *Lennon* v. *Woodbury,* 3 Cal. App. (2d) 595 [40 Pac. (2d) 292]; *Robertson* v. *Brown,* 37 Cal. App. (2d) 189 [99 Pac. (2d) 288].)

Admitting the truth of plaintiffs' evidence, as we must (*Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679 [269 Pac. 629]), they did not establish wilful misconduct on the part of defendant. The facts are clear and from them only one inference can be drawn. Hence the issue became one of law to be determined by the trial judge.

The authorities cited by appellants are not applicable to the facts of this case. (*Meek* v. *Fowler,* 3 Cal. (2d) 420 [45 Pac. (2d) 194]; *Brown* v. *Fernandez,* 140 Cal. App. 689 [36 Pac. (2d) 122]; *Gieselman* v. *Uhlman,* 7 Cal. App. (2d) 409 [45 Pac. (2d) 819].) The Gieselman case is the nearest approach to any support of appellants' contention. There the defendant disregarded the rules of prudence which should obtain. In that case, the mist was falling, the road was damp and the driver's vision was obscured by the fog on his windshield. By accelerating the speed of his car, he rendered it impossible of control within a safe distance although he was racing to cross a railroad track before the arrival of an approaching train, while other motorists were stopping, or were already waiting for the train to pass. The court merely established that it was apparent from the facts that reasonable men might believe that in accelerating his speed above 60 miles per hour,

410

under the circumstances there related, the defendant should have known that injury to his guest was probable. Neither does the case of *Marchi* v. *Virone*, 42 Cal. App. (2d) 124 [108 Pac. (2d) 469], strengthen the position of appellant. Virone was driving on a city street in Sacramento at 55 or 60 miles per hour; he swerved sharply from north to south, his car skidding as it proceeded. It was raining very hard and the pavement was slippery. Defendant had previously travelled over this same street on numerous occasions when it was slippery. According to his own testimony, he was doing 35 miles per hour when his car "slid" over the curb and struck a tree. He spurned suggestions of the safety of his guests in his zeal to arrive at his destination to meet other people on time. Giving to plaintiffs' evidence all of the value to which it would be legally entitled if the witnesses are believed, this is a proper case for the granting of a non-suit. (*Estate of Flood*, 217 Cal. 763 [21 Pac. (2d) 579].)

Judgment affirmed.

McComb, J., concurred.

WOOD, J., Concurring.—I concur in the judgment for the reason that the numerous decisions of reviewing courts of California have left no course open to us other than to affirm the judgment of the trial court.