[Civ. No. 16906.   Second Dist., Div. Three.   Oct. 19, 1949.]

LOUIS MOSCONI et al., Appellants, v. MARGARET RYAN, Respondent.

Ralph S. Rosen and A. J. O'Connor for Appellants.

Parker, Stanbury & Reese for Respondent.

SHINN, P. J.—William S. Ryan, deceased, at the time of his death was 16 years of age and the son of Margaret Ryan, the defendant herein. He held an automobile driver's license which had been issued upon an application signed and verified by his mother under the provisions of section 350(a) of the Vehicle Code. On October 7, 1948, he was driving a roadster automobile on a desert road in the vicinity of Palmdale. He had with him as guests, Charles Mosconi aged 17 years, and Bruce Tobian, a minor. At a curve in the road the car went out of control, was overturned, the Ryan and Mosconi boys were killed, and the Tobian boy was seriously injured. This action was brought by Louis Mosconi, father of Charles, and by Bruce Tobian, a minor, through his guardian *ad litem*, Marcus Tobian, against Margaret Ryan for the recovery of damages. In separate causes of action plaintiffs allege that young Ryan was driving in heavy traffic at a speed of approximately 75 miles an hour on a two-lane road on which were occasional sharp turns; that the driver maintained such speed wilfully and intentionally, without regard to human life or to the guests in the car, intending that harm should result to his guests, and not caring whether the same might result. The answer of Mrs. Ryan denied, for want of information and belief, all of the allegations of the complaint which were relied on as constituting wilful misconduct of her son. It was also alleged that the Mosconi and Tobian boys were guests of William S. Ryan and that the latter was not guilty of wilful misconduct or other misbehavior. There was a plea of contributory negligence in that the Mosconi and Tobian boys voluntarily and wilfully remained in the automobile, acquiesced in the manner in which the same was driven and assumed the risk thereof, which conduct upon their part,

it was alleged, proximately contributed to the accident and the consequences thereof.

The case was tried to a jury and on each cause of action the verdict was in favor of the defendant. Plaintiffs appeal from the resulting judgments.

The points on appeal are stated as follows: "(1) The evidence overwhelmingly shows that William S. Ryan was guilty of wilful misconduct; (2) the trial judge committed prejudicial error in stating to the jury that in all of his 30 years experience no case had been filed similar to the one on trial."

The evidence of plaintiffs (defendant introduced none) disclosed the following facts: Many cars were on their way to a dry lake to participate in or to watch speed trials. The Ryan boy and his guests were going as spectators. The fatal accident occurred at the commencement of a long, winding curve, some 24 miles east and 2 miles north of Palmdale. The macadam road was 18 feet wide, with soft sand shoulders. Bruce Tobian testified that the car went into the turn at a speed between 70 and 80 miles per hour. It went off the road, turned over and left 240 feet of tire and brush marks from the beginning of the curve to where it came to rest. On the way, the Ryan boy had passed numerous cars, some of them traveling 60 or 65 miles an hour.

Bruce Tobian testified that Ryan made two right angle turns out of Palmdale. He made the first one without difficulty, but had a little trouble at the second one, and "we told him to take it easy. We told him to slow down." This was 6 miles short of the point of the accident. He testified that both he and Mosconi told Ryan several times to slow down but that he paid no attention to them and the speed of the car was not reduced.

Defendant informs us that the court instructed the jury to the effect that it is presumed that every person takes ordinary care of his own concerns and that he obeys the law, and that such presumption will prevail unless the jury finds that it is overcome by evidence to the contrary. It is argued that this presumption stands as evidence here that the Ryan boy was not even guilty of negligence, much less of wilful misconduct. We are by no means satisfied that under the evidence as to the manner in which the accident occurred the presumption against negligence would be of sufficient substantiality to create a conflict in the evidence, but it is true, as defendant contends, that a presumption against wil-

ful misconduct is included in the presumption against negligence. It was incumbent upon plaintiffs to prove wilful misconduct. They argue that they succeeded in doing that. They rely upon cases in which the evidence was held sufficient to support a finding of wilful misconduct, but none in which it was held that the evidence proved wilful misconduct as a matter of law. Defendant, upon the other hand, has cited as controlling, *McLeod* v. *Dutton,* 13 Cal.App.2d 545 [57 P.2d 189], and *Katz* v. *Kuppin,* 44 Cal.App.2d 406 [112 P.2d 681], in each of which it was held as a matter of law that the evidence was insufficient to support a finding of wilful misconduct. These are but two of many cases which declare that the acts to constitute misconduct must be done under circumstances disclosing knowledge, express or implied, that an injury to a guest will be a probable result. It has been repeatedly said that the charge of wilful misconduct must be determined from the particular circumstances of the case. In unexceptional cases it presents a question of fact. ■ Our inquiry, then, is whether the evidence was such as to exclude as wholly unreasonable a conclusion that the Ryan boy was not guilty of wilful misconduct. Clearly the question calls for a negative answer. The jury was not required to infer that the 16-year-old boy, daring as he was, had an appreciation of the danger that lay ahead of him. Although the macadam roadway was only 18 feet wide, and although a considerable number of cars were traveling east, as Ryan was, and if it be assumed that the jury believed he was driving at 70 or 80 miles per hour, it would not necessarily follow that he doubted his ability to stay on the road and to avoid collision with other vehicles. Even though it may be well argued, in the light of what happened, that he had no regard for his own safety or that of his guests, another reasonable conclusion is that he believed he would be able to see dangerous conditions ahead in time to cope with them. There was no evidence that he had been over the road before. He had rounded two right angle turns before reaching the one at which the fatal accident occurred, some 24 miles east of Palmdale. As the car approached the curve it was going slightly uphill, but the road sloped downward toward the curve from the point of the rise toward the west. The time was about 9:30 a. m., the visibility was good and the road dry. The Tobian boy testified that he did not see the curve as they approached it. Although in this curve, which bore to the right, the course of the road changed from east and west to directly north and

south, it was not an abrupt curve, and it was slightly banked. As nearly as we can determine from the surveyor's map which was in evidence, the arc of the curve was considerably more than 400 feet in length. The point where the roadway took a direct south course was approximately 280 feet east and 280 feet south of the point where the curve began. Some 1,200 feet west of the curve there was a sign indicating a curve and another mutilated sign, "Bad Curve." Although these signs were in plain sight, there was no evidence that the Ryan boy noticed them, or that he saw the curve in time to have slowed down to a safe speed. There was some evidence that he applied his brakes and skidded his tires as he entered the curve. At the age of 16 years he could scarcely have been an experienced driver. His youth was an important factor for the jury to consider. The measure of caution that is required of adults to disprove wilful misconduct is not to be expected of inexperienced 16-year-old boys. It was for the jury to determine whether young Ryan had complete confidence that he would arrive at his destination safely. Their implied finding was in the affirmative. We could not disturb that finding without holding, in effect, that every young boy who takes long chances in driving his car realizes that such conduct will probably result in injury to himself or his guests, or is wholly indifferent as to the consequences. This, of course, would be not only bad law, but also untrue as a matter of fact. It was not an unreasonable conclusion from the evidence that the Ryan boy did not have an appreciation of the danger of what he was doing or any fear that he or his guests would suffer injury.

On motion of plaintiffs for a new trial, one of their attorneys filed an affidavit in which he stated that during the trial the judge said from the bench that in all his 30 years' experience no case had been filed similar to the one on trial, and it was alleged that said remark was prejudicial to the plaintiffs, in that it was calculated to cause the jury to believe that plaintiffs' case had no merit. The reporter's transcript does not contain any such statement of the court and necessarily there is no showing as to the circumstances under which the remark was made, nor does the record show that objection was interposed on behalf of plaintiffs. The remark, if made, may well have been pertinent to the matter under discussion. We are well satisfied that the trial judge would not have intimated that he considered the case to be without merit, nor can we believe that the observation meant

more than that the circumstances of the case were most unusual. We discover in it no lack of consideration for the rights of plaintiffs, nor any sound basis for the claim of prejudice.

The judgments are affirmed. The attempted appeal from the order denying motion for new trial is dismissed.

VALLÉE, J.—I concur. I agree with Mr. Justice Wood that the jury might well have interpreted the remark of the trial judge to mean such cases were not filed and that they had no merit. However, on the record I am unable to say that making the remark was error, or if it was, that it was prejudicial. The proceedings which occurred at the time the remark was made were not reported. They should have been. Without the setting, the remarks of counsel, and the situation which prompted the remark, I cannot say that the judgment should be reversed. The learned judge who tried the case is not one given to the making of gratuitous remarks. I am satisfied that if he had thought that his making of the remark was prejudicial or affected the result in any way, he would have granted a new trial.

WOOD, J.—I dissent. It cannot be determined, of course, whether the jury found that the driver was not guilty of wilful misconduct, or whether it found that he was guilty of wilful misconduct but that the guests assumed the risk of riding with him. If the jury found that the driver was not guilty of wilful misconduct, that finding, in my opinion, was not supported by the evidence. If the jury found that the driver was guilty of wilful misconduct but that the guests assumed the risk of riding with him, then it necessarily appears that the jury disbelieved the uncontradicted testimony of Bruce Tobian, the surviving guest, that he and Charles Mosconi, the deceased guest, told the driver "several times to slow down" and that the driver "just didn't pay any attention to us." That witness was not impeached in any respect and that testimony was not at all unreasonable. In view of such terrific speed of the light automobile upon a narrow and hazardous public highway, where many other automobiles were being driven, it would seem reasonable that the guests would demand that the driver slow down.

If the verdict was based upon a finding that such testimony of Bruce Tobian was not true, it should appear clearly that the rights of plaintiffs to a fair trial were not preju-

dicially affected by remarks of the trial judge. Upon the hearing of the plaintiffs' motion for a new trial, the attorney for plaintiff who tried the case filed his affidavit which recited in part as follows: "That during the trial the Court, in the presence of the jury, stated from the bench that in all his thirty years experience no case had been filed similar to the one on trial." It does not appear that any counteraffidavit was filed by defendant's attorneys, or that any denial of said alleged statement was made by said attorneys or the judge or anyone. Even though the shorthand reporter did not report said alleged part of the proceedings, it appears that it is true that the trial judge made said statement. The jury might well have interpreted that remark of the judge to mean such cases were not filed and that they had no merit. I think that a new trial should have been granted. In my opinion the judgment should be reversed.

A petition for a rehearing was denied November 15, 1949. Wood, J., voted for a rehearing. Appellants' petition for a hearing by the Supreme Court was denied December 15, 1949. Carter, J., and Traynor, J., voted for a hearing.