[Civ. No. 15671. First Dist., Div. Two. Feb. 17, 1954.]

TRUSTY S. HALLMAN, Appellant, v. JACK RICHARDS, Respondent.

Allan, Miller & Groezinger for Appellant.

Hadsell, Murman & Bishop for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of nonsuit in favor of defendant, respondent herein, following defendant's motion at the completion of plaintiff's evidence in a personal injury action by a guest based on a claim of wilful misconduct on the part of the driver.

On the night of August 4, 1951, respondent, Jack Richards, invited plaintiff Hallman to ride with him as a guest in his

1951 Ford coupé. Hallman had finished his duties as desk clerk at a San Francisco hotel at about 12 p. m. that night. He and respondent then drove across the Golden Gate Bridge to Sausalito to play shuffleboard at a bar and recreation center known as The Plaza, where they had been a couple of times before. They played shuffleboard and appellant drank three beers while Richards, according to appellant, had three or four bourbons. Respondent appeared sober to appellant when they left for San Francisco at about 2 a. m.

Appellant testified that Richards was driving at between 55 and 60 miles per hour after they made the stop at the toll gate and before they reached the point on the bridge approach where the accident occurred. The surface of the road was damp. At the point where the highway divides to continue by way of Doyle Avenue northeasterly to Marina Boulevard and by way of Richardson Avenue southeasterly into the city, respondent's automobile struck with great force the concrete pier located at the center point where the highway divides, causing severe personal injuries to appellant.

The only issue on this appeal is whether appellant offered sufficient evidence of wilful misconduct on the part of the respondent to take the case to the jury.

Appellant had testified that as they left the toll plaza and proceeded toward the city, respondent was driving at between 55 and 60 miles per hour. As they approached the abutment dividing the highway, he increased the speed, and must have been going over 60 miles per hour. He was driving in the center lane of the three lanes proceeding eastward. There was one car on the right and one on the left as they left the toll plaza. Richards was in the middle lane of the three eastbound lanes. As to the position of the car on the right, appellant stated on cross-examination, that they were "running pretty much neck and neck." The car to the right was traveling at a speed which he estimated at between 55 to 60 miles per hour before Richards speeded up. He recalled the car at the left traveling at about the same speed, but did not recall its position just before the accident occurred. Appellant's deposition taken on January 11, 1952, was read from on cross-examination. He had there stated that respondent was in the center position between the two cars and had speeded up trying to get ahead of them, that he would slow up and then speed up to get ahead.

The witness Carver, the driver of the car to respondent's right, had driven on to the bridge approach from the Four-

teenth Avenue entrance. He testified that he was driving at about 50 miles per hour, that respondent passed him up, that then he did better than 50, about 55 "because he passed me and I passed him up." Then respondent drew up even with Carver again, and they were then about 25 feet from the abutment. After he passed the abutment he heard a crash and realized there had been an accident. He stopped his car and backed up to the abutment. He saw that the passenger in respondent's car was badly injured, and told a passing motorist to notify the Highway Patrol. The front end of the Ford was badly damaged, the right side shattered where it had hit the abutment, the frame was bent up, and hot water was spouting up from the engine.

Officer Morgan of the State Highway Patrol, an officer of 16 years' experience, testified that when he arrived at the scene he noted that the engine of the Ford was demolished and caved in, the windshield on the right side was cracked, and the doors of the car could not be closed. Respondent's passenger was cut up and bleeding badly, and was squeezed down to the level of the dashboard and crumpled up. He described the abutment as a little over 3 feet 2 inches wide and 3 feet high. A square of concrete had been chipped off by the impact. There is a large light on the abutment which flashes intermittently about 36 times to the minute and has a beam of about 500 feet. The officer stated that the night was misty, the pavement wet in spots, and that windshield wipers were necessary.

The skid tracks caused by the application of respondent's brakes were described by the officer as a solid strip of heavy rubber marks for 19 feet back from the rear of the vehicle. At the end of the heavy mark of 19 feet there were lighter rubber markings in an unbroken line for 160 feet back. The skid marks crossed the lane and proceeded straight to the abutment.

The officer questioned respondent who first replied that he had been run off the road. When the officer told him it was pretty hard to get run off this road and asked him what he had been doing, he said "I don't know." Respondent told him not to talk to his partner, that he was asleep and wouldn't know anything. Respondent stated to the officer that he had been driving 35 miles per hour. When the officer said he was going to ask his partner about going to the hospital, respondent said "please don't do that, he's been drinking and I have been drinking and I don't know what he will tell

you." The officer wanted to know how sober respondent was, so asked him to make a balance test. He couldn't maintain his balance without some assistance. The answers he made were rambling.

Unless it can be said that the evidence herein viewed in the light most favorable to plaintiff establishes that there was no wilful misconduct as a matter of law, it was the duty of the trial court to deny the nonsuit. (*Hoff* v. *Los Angeles Pac. Co.*, 158 Cal. 596 [112 P. 53] ; *Amendt* v. *Pacific Elec. Ry. Co.*, 46 Cal.App.2d 248 [115 P.2d 288] ; *Newton* v. *Cox*, 73 Cal. App. 695 [239 P. 54].) Appellant contends that there was evidence presented which could give rise to the inference of wilful misconduct and that it was therefore for the jury to decide whether or not such inference should be drawn. (*Miller* v. *Cookson*, 89 Cal.App. 602 [265 P. 374] ; *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1].)

It is conceded that plaintiff was a guest, but respondent contends that the evidence shows at most, negligence on his part, and fails to show that element of actual knowledge of the peril to be apprehended from his conduct. The Supreme Court in *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447], pointed out that wilful misconduct means something different from and more than negligence, however gross.

To constitute wilful misconduct "there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (Citation.) To this must be added the element included in the definition approved in *Meek* v. *Fowler,* 3 Cal.2d 420, 425 [45 P.2d 194] and cases following it, of actual knowledge or its equivalent that an injury to a guest will be a probable result." In the cited case the accident occurred when the woman driving the car turned her head momentarily to look at the children in the back seat when she was driving at a speed of 45 miles an hour. In *Meek* v. *Fowler, supra,* it was held not to be wilful misconduct, but a mistake in judgment as to whether or not a driver could cross an intersection before the arrival of another vehicle.

Appellant contends that the cited cases are very different from the present case where respondent drove forward for 179 feet (as shown by the skid marks) straight into a stone abutment, clearly illumined, and with five lanes of highway immediately adjacent into which he could have guided the

vehicle had his speed been reasonable—and this on a highway which was familiar to him and where it must be implied that he had knowledge of the peril of the abutment dividing the two approaches to the city.

There need not be a deliberate intention to injure the guest. (*Hagglund* v. *Nelson*, 23 Cal.App.2d 348 [73 P.2d 265] ; *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719 [125 P.2d 586].) Otherwise it would seldom be possible to prove a case of wilful misconduct if it were necessary to have an admission of intent on the part of the driver to injure his guest. (*Wright* v. *Sellers*, 25 Cal.App.2d 603 [78 P.2d 209].) Appellant points to evidence from which a consciousness of misconduct on the part of respondent may be inferred—his statement to the highway patrolman that he was "run off the road," then his abandonment of that excuse and his statement that he could not make up his mind which way to go.

The driver's knowledge of probability of injury may be either express or implied, there must be either actual knowledge or that which in contemplation of law will be deemed equivalent to actual knowledge. (*Hastings* v. *Serleto*, 61 Cal.App.2d 672 [143 P.2d 956].) Appellant's testimony discloses that on the highway to San Francisco there are three eastbound lanes from the toll plaza to a point approaching the abutment, where the road widens, three lanes going to the right to Richardson Avenue and two broadening out to the left to Doyle Street. There was testimony that the driver speeded up as he approached the abutment. He was apparently attempting to pass the Carver car which was traveling at least 50 miles per hour about 30 yards from the dividing pier. A high rate of speed can be inferred from the demolished condition of the car.

Respondent points out that speed alone does not amount to wilful misconduct, but that special circumstances must be shown bringing the case within the definition of wilful misconduct. Such circumstances must make an accident probable. (*Rhoads* v. *Studley*, 15 Cal.App.2d 726 [59 P.2d 1082] ; *Robertson* v. *Brown*, 37 Cal.App.2d 189 [99 P.2d 288].) The state speed limit of 55 miles per hour applies to the stretch of highway where the accident occurred. While there was dampness on the highway, there was no evidence that visibility was impaired. Other automobiles were traveling at the same speed. The evidence shows that the yellow flashing light on the abutment was visible for 500 feet, but,

respondent says, there is no evidence as to whether or not respondent saw it, and even if he did not see it, this would amount to mere inattention which does not in law amount to wilful misconduct. (*Stacey* v. *Hayes*, 31 Cal.App.2d 422 [88 P.2d 165]; *Porter* v. *Hofman, supra*; *People* v. *McNutt*, 40 Cal.App.2d Supp. 835 [105 P.2d 657].) It does seem, however, that respondent's inference is not the only one which can be drawn from these facts. Appellant argues that the speed of 55 miles per hour is subject to the basic rule of section 510, Vehicle Code, that the speed must not be "greater than is reasonable and prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." ■ The dangerous nature of this portion of the highway is warned against by a large flashing lamp with a 500-foot beam. It is true that there is no direct testimony that respondent did or did not see the light, but the skid marks for 179 feet to the point of impact would warrant an inference that he did. In *Johnson* v. *Marquis*, 93 Cal.App. 2d 341 [209 P.2d 63], it was held that there was sufficient evidence of wilful misconduct where a woman with full knowledge of the hazards of a highway with sharp curves and grades deliberately and recklessly drove her car on a dark and misty night which required the use of windshield wipers, at 80 miles per hour around a curve and down a grade, crashing into the rear of a parked truck which had red warning lights burning, without seeing it. In the instant case, respondent was familiar with the highway, and must be presumed to have been aware of the danger. He had been drinking intoxicants, which is a circumstance to be considered as bearing on whether 60 miles per hour with such road conditions should be considered as conduct making it not improbable that injury to his passenger might result. (*Fisher* v. *Zimmerman*, 23 Cal.App.2d 696 [73 P.2d 1243]; *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719 [125 P.2d 586].) In *Jones* v. *Harris*, 104 Cal.App.2d 347 [231 P.2d 561], it was said that it could not be held as a matter of law that there was no evidence to support the verdict where there was evidence that Harris was driving at an excessive rate of speed (60 miles per hour) in heavy traffic, that he "crowded" the white line, that although he was requested by plaintiff to pull over a "little bit" before meeting another car, he refused to do so and deliberately continued straight toward it until it was too late to avoid the crash.

Respondent cites the following cases in which it was held that there was no evidence of wilful misconduct: *McLeod* v. *Dutton,* 13 Cal.App.2d 545 [57 P.2d 189]; *Hall* v. *Mazzei,* 14 Cal.App.2d 48 [57 P.2d 948]; *Stacey* v. *Hayes,* 31 Cal.App. 2d 422 [88 P.2d 165]; *Lennon* v. *Woodbury,* 3 Cal.App.2d 595 [40 P.2d 292]; *Weir* v. *Lukes,* 13 Cal.App.2d 312 [56 P.2d 987]; *Katz* v. *Kuppin,* 44 Cal.App.2d 406 [112 P.2d 681]. In his reply brief, appellant successfully distinguishes all these cases from the present one on the facts.

Respondent says that appellant's contention that he drove in a straight line for 179 feet into the abutment is not supported by the facts, since when Officer Morgan was asked if the skid marks proceeded in one lane in an unbroken line, he answered: "No, they crossed. They were crossing from this lane to here, as I indicated they do curve somewhat here for 160 feet and 19 solid." It is to be remembered that the lane at that point was curving somewhat toward the right.

In *De Loss* v. *Lewis,* 78 Cal.App.2d 223 [117 P.2d 589], this court in reversing a nonsuit in a wilful misconduct case quoted the following language of *Blank* v. *Coffin,* 20 Cal.2d 457, 461 [126 P.2d 868]; "Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury."

It was said in *Wright* v. *Sellers,* 25 Cal.App.2d 603, 607 [78 P.2d 209], "On the one hand are numerous cases in which the appellate and supreme courts found no difficulty in holding that the acts of a driver of an automobile constituted wilful misconduct. On the other hand are an equal, if not a greater number of cases where the acts relied upon were held, as a matter of law, not to constitute wilful misconduct. Between these two fairly well defined zones of decision appears another class composed of what may be called border line cases . . . In this class of cases, frequently, though not always, it has been held that the question of the existence of wilful misconduct is one of fact addressed to the trier of fact and not one of law for the appellate court."

In determining whether the driver of a car is guilty of wilful misconduct, his entire course of conduct, including his speed, is to be considered by the court. (7 Cal.Jur.2d 232, § 337; *Anderson* v. *Newkirch,* 101 Cal.App.2d 171 [225 P. 2d 247]; *Hollingum* v. *Moore,* 102 Cal.App.2d 509 [227 P.2d 845].)

It has been held that the duty of a guest to remonstrate or to withdraw from the vehicle is not absolute, but depends upon the particular circumstances (7 Cal.Jur.2d 245, § 340). In the instant case the guest did not raise any objection to the manner in which respondent was driving. ■ Even if there is evidence from which an inference of wilful misconduct could be drawn, a nonsuit could still properly be granted if plaintiff's evidence establishes assumption of risk as a matter of law. It might be said here that the failure to remonstrate could be considered evidence of assumption of risk as to the speed, but the danger has resulted not from the speed alone, but the driving out of the traffic lane and into the abutment, making it a situation where there was no opportunity on the part of the guest to protest against the dangerous conduct. (7 Cal.Jur.2d 245, § 340; *McSweeney* v. *East Bay Transit Co.*, 60 Cal.App.2d 807 [141 P.2d 787]; *Swink* v. *Gardena Club*, 65 Cal.App.2d 674 [151 P.2d 313].)

■ In the instant case there is evidence that the respondent traveled at a high rate of speed; he was traveling on a highway that was damp in spots; the night was misty, windshield wipers were being used; he attempted to pass other vehicles in the presence of a conspicuous danger signal and approaching curves and then drove 179 feet straight into a concrete abutment. Further, there is evidence that respondent was familiar with the highway and it must be presumed would have been aware of the danger. He had been drinking whiskey, which is a circumstance to be considered as bearing on whether 60 miles per hour under such road conditions should be considered as conduct making it not improbable that injury to appellant might result.

In view of the foregoing evidence we conclude that it was for the jury to determine whether or not an inference of wilful misconduct should be drawn and that it was prejudicial error to enter a judgment of nonsuit.

Judgment reversed.

Nourse, P. J., and Dooling, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 14, 1954. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.